# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9465 | **DATE** | 10/19/2004 |
| **CASE TITLE** | Gross vs. Town of Cicero, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant Loren-Maltese', Cicero and Gonzalez's motions to dismiss are denied except that plaintiff's official capacity claim against Loren-Maltese as to Count II is dismissed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | OCT 20 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 87 |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | 2004 OCT 19 PM 2:44 U.S. DISTRICT COURT Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **CLARENCE GROSS,** | ) |
| **Plaintiff,** | ) |
| | ) No. 03 C 9465 |
| v. | ) |
| | ) Judge John W. Darrah |
| **TOWN OF CICERO; BETTY LOREN-MALTESE,** former President of the Town of Cicero, in her official and individual capacity; and **RAMIRO GONZALEZ,** President of the Town of Cicero, in his official and individual capacity, | ) ) ) ) ) ) |
| **Defendants.** | ) |

DOCKETED
OCT 20 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Clarence Gross, filed suit against Defendants, the Town of Cicero; Betty Loren-Maltese, in her official and individual capacity; and Ramiro Gonzalez, in his official and individual capacity, under the First and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §1983 and the Civil Rights Act of 1991. Count I alleges a § 1983 violation of the First Amendment against Cicero, Loren-Maltese, and Gonzalez. Count II alleges a § 1983 violation of Equal Protection against Cicero, Loren-Maltese, and Gonzalez. Presently pending before the Court is: (1) Loren-Maltese's Motion to Dismiss Gross's Complaint and (2) Cicero and Gonzalez's Joint Motion to Dismiss Gross's Complaint.

### BACKGROUND

A reading of Gross's complaint supports the following summary of the alleged conduct of the parties.

Gross was employed in various positions by Cicero for thirty years. He retired in April of 1997 as the Chief of Police for the Cicero Police Department. After retiring, Gross was appointed

by Loren-Maltese to the position of Deputy Liquor Commissioner, Director of Internal Services and Chairman of the Board of Fire and Police Commissioners. Gross was also a 911 Board Member and a Hearing Officer. In addition, Gross received an accommodation from Loren-Maltese for thirty years of police excellence.

In 2001, Gross went to Loren-Maltese on several occasions and complained about his daughter, a police officer, being sexually harassed by her superior officer, Jerald Rodish. Gross expressed his concerns for his daughter's safety as a result of Rodish's harassment and threats. Because no remedial action was taken by Cicero's supervisory staff or Loren-Maltese, Gross's daughter filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June of 2001. After his daughter filed the EEOC charge, Gross had a meeting with Loren-Maltese, at which time Loren-Maltese stated, "I can no longer trust you or your daughter because of this EEOC thing."

After the meeting with Loren-Maltese and Gross, he was removed from the positions he held. In October of 2001, Gross was excluded from the 911 Board meetings and no longer acted in the capacity as a Board member. In late 2001, Loren-Maltese called Gross to inform him that he would not be reappointed as the Chairman of the Board of Fire and Police Commissioners for 2002; and Gross was removed from this position in January of 2002. In January of 2002, Gross was no longer given assignments in his capacity as Director of Internal Services and was later terminated from this position. On September 23, 2002, Gross received a letter from Gonzalez, who was aware that Gross's daughter filed an EEOC discrimination charge, notifying him of his removal from the position of Deputy Liquor Commissioner.

After receiving this letter, Gross phoned Edward Vrdolyak and was told by Vrdolyak, "I cannot understand why she did this to you" (referring to Loren-Maltese). On December 31, 2002, Gross sent Vrdolyak a letter requesting compensation for back pay, vacation, accumulated sick time, overtime, and money from the retirement buy-out, all of which was owed to Gross by Cicero. Gross received no response and sent another letter to Vrdolyak on February 24, 2003, concerning the amount owed to him. However, it was not until after August of 2003 that Gross received a call from Vrdolyak concerning the money owed. Gross had been subpoenaed in the case of *Moreno v. Town of Cicero*, Case No. 01 C 1726 (N.D.Ill), after being identified as a witness by the plaintiff in that case. Vrdolyak informed Gross that Cicero would not pay him his backpay until after the *Moreno* case had settled. Vrodolyak also threatened Gross and told him to remain silent in the *Moreno* case and, if called to testify, not to tell the truth.

Gross was discriminated and retaliated against for complaining about sexual harassment and retaliation directed at his daughter and for his willingness to tell the truth and testify in the *Moreno* case.

## ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). A filing under Federal Rules of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it

3

suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim." *Graehling v. Village of Lombard, Ill*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

The Defendants present several arguments as to why most of Plaintiff's Complaint should be dismissed.

### *Official Capacity Claims Against Loren-Maltese*

Loren-Maltese argues that the Plaintiff's "official capacity" claims against her should be dismissed because the claims are identical to those asserted against Cicero and are based on the same set of allegations.

Official capacity suits are akin to bringing suits against the entity, here, a municipality itself. "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Contreras v. City of Chicago*, 920 F.Supp 1370, 1376 n.1 (N.D.Ill. 1996) (dismissing *sua sponte* official capacity claims). In addition, courts have emphasized that civil rights claims against individual defendants in their official capacities are redundant of the claims brought against a governmental entity and,

4

therefore, must be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). Accordingly, Plaintiff's official capacity claims against Loren-Maltese as to Counts I and II are dismissed.

*All Claims Against Loren-Maltese Are Barred By the Statute of Limitations*

Loren-Maltese also argues that Counts I and II against her should be dismissed because the Plaintiff's claims are barred by the statute of limitations. In addition, Loren-Maltese contends that she cannot be liable for any conduct occurring after she resigned as Town President.

The statute of limitations for a § 1983 claim is two years. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, (7th Cir. 2003); *Licari v. City of Chicago*, 298 F.3d 664 (7th Cir. 2002). According to Loren-Maltese, the Plaintiff's claim cannot rest on any conduct that occurred before December 31, 2001 (two years before the complaint was filed). In addition, to bring a § 1983 claim, the Plaintiff must plead and prove that the Defendant acted "under color of state law." *See Ross v. Town of Austin*, 343 F.3d 915 (7th Cir. 2002). Loren-Maltese argues that once she resigned on August 1, 2002, she was no longer acting "under color of state law" and, that therefore, no § 1983 claim exists beyond her resignation. According to Loren-Maltese, the only actionable conduct against her had to occur between December 31, 2001 and August 1, 2002. Because the Plaintiff makes only one allegation occurring within this time period, Loren-Maltese argues that she cannot be liable under a § 1983 claim.

A defendant can be held liable under § 1983 if "he caused or participated in the alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). A supervisory official takes part in the deprivation if he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at his

5

direction or with knowledge or consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). If the supervisors know about the harassing conduct and "facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see," they act with deliberate, reckless indifference. *Jones v. City of Chicago* 856 F.2d 985, 992-93 (7th Cir. 1988).

The Plaintiff pled incidents occurring within the statute of limitations against Loren-Maltese. In January 2002, Plaintiff was removed from the position of Chairman of the Board of Fire and Police Commissioners; and in January 2002, Plaintiff was terminated from his position as Director of Internal Services. Furthermore, the Plaintiff alleges that Loren-Maltese was personally involved in the retaliation against him after her resignation. The Plaintiff asserts that one month after Loren-Maltese resigned, Loren-Maltese had him removed from his position as Deputy Liquor Commissioner. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 at 103 (emphasizing that "subsequent events may still be part of one claim."). Accordingly, Plaintiff's Section 1983 claims against Loren-Maltese are not barred by the statute of limitations.

*Political Patronage Exemption Exception*

Loren-Maltese argues that the Plaintiff's claim must be dismissed against her because the Plaintiff held "exempt" positions and, therefore, cannot bring claims for violations of his constitutional rights under § 1983.

The patronage dismissal of a public employee violates an employee's First Amendment right to freedom of political association. *Kline v. Hughes*, 131 F.3d 708, 709 (7th Cir. 1997) (*Kline*). However, an exception arises when "the hiring authority can demonstrate that the party affiliation is an appropriate requirement for the affected performance of the public office involved." *Kline*, 131 F.3d at 709. The courts must determine whether "the position held by the individual authorizes,

either directly or indirectly, meaningful input into governmental decision making on issues where there is room for principled disagreement on goals or other implementation." *Kline*, 131 F.3d at 709. According to Loren-Maltese, the Plaintiff's positions allowed the Plaintiff to be a member of the inner circle of Cicero's government. Because he was responsible for policymaking, goals, and their implementation, he had meaningful input and, therefore, cannot sue for his alleged termination from the various positions he held.

However, the "exempt" position exception applies only to political affiliation claims under the First Amendment and not to free speech claims. *See Kline*, 131 F.3d at 709 (a political patronage case based upon political affiliation); *Elrod v. Burns*, 427 U.S. 347 (1976) (a political patronage case based upon political affiliation). The Plaintiff does not claim he was terminated from his positions because of his political affiliation, but he was terminated based on free speech grounds. Even if the Plaintiff was in an "exempt" position, his claims are not barred by the political patronage exception because he is not basing his First Amendment claim on political affiliation. Therefore, Defendant's Motion to Dismiss Count I pursuant to the political patronage exception is denied.

*The Plaintiff's Speech is Not "Protected Speech"*

Loren-Maltese, Cicero, and Gonzalez argue that Count I should be dismissed against them because the Plaintiff has not alleged any constitutional protected "free speech."

The Seventh Circuit applies a three-step analysis when determining whether speech constitutes a matter of public concern. *Brown v. Disciplinary Committee*, 97 F.3d 969, 972 (7th Cir. 1996) (*Brown*). First, the court considers whether the speech would be protected if someone other than a public employee had made the statement. *Brown*, 97 F.3d at 972. Second, the court determines whether the speech is something more than an employee grievance. *Brown*, 97 F.3d at

7

972. Finally, if the court determines that the speech is not an employee grievance, the court must then make a decision as to whether there was a convincing reason to forbid the speech. *Brown*, 97 F.3d at 972.

Plaintiff has sufficiently pled her First Amendment claim to put Defendants on notice of his claim. Where speech is intended to serve a private or personal interest, it may not meet the standards for First Amendment protection, even if it addresses an issue of public interest. *Friend v. Lalley*, 194 F. Supp. 2d 803 (N.D.Ill. 2002). However, while the speaker's motivation is significant, the mere presence of personal motive does not prevent it from being a matter of public concern. *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990). The Plaintiff alleges that he was retaliated against for complaining about sexual harassment within the police force and Cicero and after he expressed his willingness to tell the truth and testify in the case of *Moreno*. After receiving a subpoena to testify in the *Moreno* case against Cicero, the Plaintiff was allegedly threatened to remain silent and lie if called to testify or else he would be denied his back pay. These threats are a matter of public concern and have a broader impact on the community and public welfare. Accordingly, the Motion to Dismiss Count I is denied.

*Cicero and Gonzalez's Argument That The Plaintiff Has No Equal Protection Claim*

Cicero and Gonzalez argue that the Plaintiff has no Equal Protection claim because there are a host of conceivable legitimate governmental purposes which bear a rational relationship to the Plaintiff's being removed from his various positions.

The Equal Protection Clause grants to all citizens "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Baumgardner v. County of Cook*, 108 F. Supp. 2d 1041, 1054-56 (N. D. Ill. 2000) ("A single act against one individual can

be a violation of the Equal Protection Clause . . . it is sufficient to prove discrimination against the plaintiff because of his membership in a particular class."). Under a "class of one" theory, the plaintiff must allege that "(1) he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, or (2) the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the differential treatment is a totally illegitimate animus toward him [by the governmental entity]." *Murphy v. County of McHenry*, No. 02 C 50283, 2003 WL 1908045 (N. D. Ill. April 18, 2003).

The Plaintiff alleges that he was discriminated against because of his familial association with his daughter and because he and his daughter complained about the harassment of her superior officer. Cicero and Gonzalez argue that the Plaintiff has no Equal Protection claim because there is no fundamental right to "familial association" anywhere in the Constitution or Bill of Rights.

The Plaintiff alleges that Cicero's and Gonzalez's actions against him were intentional, willful, malicious and/or in deliberate indifference for his rights as secured by § 1983 and that he was terminated from his positions for reasons wholly unrelated to any legitimate state objective. *See Lunini v. Grayeb*, 305 F. Supp. 2d 893, 909 (C. D. Ill. 2004) (emphasizing that "[the plaintiff] must show that the cause of the differential treatment toward him was a totally illegitimate animus on the part of the City Defendants."). The Plaintiff has sufficiently pled that he was terminated from his positions based on invidious discrimination and irrational prejudice. *See Baumgardner*, 108 F. Supp. 2d at 1054-56 ("[T]he state actions must still bear a rational relationship to a legitimate government interest . . . The Equal Protection Clause exists to protect people from invidious discrimination and irrational prejudice. While Defendants may or may not ultimately prevail by offering a reasonable basis for their actions, the Plaintiff has pled facts sufficient to survive a 12(b)(6) motion to

dismiss."). Accordingly, the Motion to Dismiss Count II against Cicero and Gonzalez is denied.

In addition, Gonzalez argues that the Plaintiff has not pled an Equal Protection claim against him because the Plaintiff pled no facts to suggest a conspiracy involving him and Loren-Maltese to remove the Plaintiff from the position of Deputy Liquor Commissioner. However, the Plaintiff alleges that Gonzalez knew of his daughter's EEOC charge and, therefore, removed him from his position in retaliation. Therefore, the Motion to Dismiss Count II against Gonzalez is denied.

## CONCLUSION

For the foregoing reasons, Loren-Maltese', Cicero', and Gonzalez's Motions to Dismiss are denied except that Plaintiff's official capacity claim against Loren-Maltese as to Count II is dismissed.

Dated: October 19, 2004

JOHN W. DARRAH
United States District Judge