# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CLARENCE GROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 C 9465 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| TOWN OF CICERO; BETTY LOREN-MALTESE, | ) | |
| former President of the Town of Cicero; | ) | |
| RAMIRO GONZALEZ, President of the Town | ) | |
| of Cicero; and EDWARD VRDOLYAK, individually. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Clarence Gross ("Gross"), filed suit against Defendants, the Town of Cicero,

Betty Loren-Maltese, and Ramiro Gonzalez. Plaintiff filed a First Amended Complaint joining

Edward Vrdolyak ("Vrdolyak") as a Defendant. Count I alleges violation of the Plaintiff's First

Amendment rights. Count II alleges a violation of Plaintiff's Equal Protection rights. Presently

pending before the Court is Vrdolyak's Motion to Dismiss.

### BACKGROUND

A reading of Gross's First Amended Complaint supports the following summary of the

alleged conduct of the parties.

Gross was employed in various positions by Cicero for thirty years. He retired in April of

1997 as the Chief of Police for the Cicero Police Department. After retiring, Gross was appointed

by Loren-Maltese to the position of Deputy Liquor Commissioner, Director of Internal Services and

1

Chairman of the Board of Fire and Police Commissioners. Gross was also a 911 Board Member and a Hearing Officer.

In 2001, Gross went to Loren-Maltese on several occasions and complained about his daughter's, a police officer, being sexually harassed by her superior officer, Jerald Rodish. Gross expressed his concerns for his daughter's safety as a result of Rodish's harassment and threats. Because no remedial action was taken by Cicero's supervisory staff or Loren-Maltese, Gross's daughter filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in June of 2001. After his daughter filed the EEOC charge, Gross had a meeting with Loren-Maltese, at which time Loren-Maltese stated, "I can no longer trust you or your daughter because of this EEOC thing."

After the meeting with Loren-Maltese and Gross, he was removed from the positions he held. In October of 2001, Gross was excluded from the 911 Board meetings and no longer acted in the capacity as a Board Member. In late 2001, Loren-Maltese called Gross to inform him that he would not be reappointed as the Chairman of the Board of Fire and Police Commissioners for 2002; and Gross was removed from this position in January of 2002. In January of 2002, Gross was no longer given assignments in his capacity as Director of Internal Services and was later terminated from this position. On September 23, 2002, Gross received a letter from Gonzalez, who was aware that Gross's daughter filed an EEOC discrimination charge, notifying him of his removal from the position of Deputy Liquor Commissioner.

After receiving this letter, Gross phoned Vrdolyak and was told by Vrdolyak, "I cannot understand why she did this to you" (referring to Loren-Maltese). On December 31, 2002, Gross sent Vrdolyak a letter requesting compensation for back pay, vacation, accumulated sick time,

2

overtime, and money from the retirement buy-out, all of which was owed to Gross by Cicero. Gross received no response and sent another letter to Vrdolyak on February 24, 2003, concerning the amount owed to him. However, it was not until after August of 2003 that Gross received a call from Vrdolyak concerning the money owed. Gross had been subpoenaed in the case of *Moreno v. Town of Cicero*, Case No. 01 C 1726, after being identified as a witness by the plaintiff in that case. Vrdolyak informed Gross that Cicero would not pay him his back pay until after the *Moreno* case had settled. Vrdolyak also threatened Gross and told him to remain silent in the *Moreno* case and, if called to testify, not to tell the truth.

Gross alleges he was discriminated and retaliated against for complaining about sexual harassment and retaliation directed at his daughter and for his willingness to tell the truth and testify in the *Moreno* case.

### ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7 th Cir. 2002). A filing under Federal Rules of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355

3

U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim." *Graehling v. Village of Lombard, Ill*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

Vrdolyak presents several arguments as to why Plaintiff's First Amended Complaint should be dismissed.

### Failure to State a Cause of Action With Respect to Vrdolyak on the § 1983 Claim

Vrdolyak argues the § 1983 claim should be dismissed against him because the Plaintiff has not alleged any constitutionally protected speech.

The Seventh Circuit applies a three-step analysis when determining whether speech constitutes a matter of public concern. *Brown v. Disciplinary Committee*, 97 F.3d 969, 972 (7th Cir. 1996) (*Brown*). First, the court considers whether the speech would be protected if someone other than a public employee had made the statement. *Brown*, 97 F.3d at 972. Second, the court determines whether the speech is something more than an employee grievance. *Brown*, 97 F.3d at 972. Finally, if the court determines that the speech is not an employee grievance, the court must then make a decision as to whether there was a convincing reason to forbid the speech. *Brown*, 97 F.3d at 972.

Plaintiff has sufficiently pled his First Amendment claim to put Vrdolyak on notice of his claim. Where speech is intended to serve a private or personal interest, it may not meet the standards for First Amendment protection, even if it addresses an issue of public interest. *Friend v. Lalley*, 194 F. Supp. 2d 803 (N.D. Ill. 2002). However, while the speaker's motivation is significant, the mere

4

presence of personal motive does not prevent it from being a matter of public concern.

*Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990). Plaintiff alleges that he was retaliated against for complaining about sexual harassment within the police force and Cicero and after he expressed his willingness to tell the truth and testify in the case of *Moreno*. After receiving a subpoena to testify in the *Moreno* case against Cicero, the Plaintiff was allegedly threatened to remain silent and lie if called to testify or else he would be denied his back pay. These threats are a matter of public concern and have a broad impact on the community and public welfare. Accordingly, Plaintiff has properly alleged that Defendant deprived him of a federal right.

Vrdolyak further argues the § 1983 claim should be dismissed against him because the Plaintiff has not alleged that Vrdolyak acted under the color of law.

A plaintiff need only allege private individuals are jointly engaged with state officials in the prohibited action. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). "To act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 152 (citing *United States v. Price*, 398 U.S. 787, 794 (1966).

Plaintiff pled incidents of Vrdolyak's alleged conduct sufficient to state a claim. Plaintiff alleges Vrdolyak willfully participated with the other Defendants, who were officers of the State, to withhold Plaintiff's back pay due to him until after the Moreno case was settled. Plaintiff further alleges Vrdolyak threatened the Plaintiff in retaliation against the Plaintiff and his daughter to remain silent and not to tell the truth if called to testify. Accordingly, Plaintiff states a cause of action under §1983.

*Failure to State a Cause of Action With Respect to Vrdolyak on the § 1985 Claim*

Vrdolyak argues the § 1985(3) claim should be dismissed against him because the alleged conspiracy was not motivated by a racial- or class-based discrimination.

The Equal Protection Clause grants to all citizens "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Baumgardner v. County of Cook*, 108 F. Supp. 2d 1041, 1054-56 (N. D. Ill. 2000) ("A single act against one individual can be a violation of the Equal Protection Clause . . . it is sufficient to prove discrimination against the plaintiff because of his membership in a particular class."). Under a "class of one" theory, the plaintiff must allege that "(1) he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, or (2) the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the differential treatment is a totally illegitimate animus toward him [by the governmental entity]." *Murphy v. County of McHenry*, No. 02 C 50283, 2003 WL 1908045 (N. D. Ill. April 18, 2003).

Plaintiff alleges that he was discriminated against because of his familial association with his daughter and because he and his daughter complained about the harassment of her superior officer. Plaintiff alleges that Vrdolyak's actions against him were intentional, willful, malicious and/or in deliberate indifference for his rights as secured by § 1983 and that he was terminated from his positions for reasons wholly unrelated to any legitimate state objective. *See Lunini v. Grayeb*, 305 F. Supp. 2d 893, 909 (N. D. Ill. 2004) (emphasizing that "[the plaintiff] must show that the cause of the differential treatment toward him was a totally illegitimate animus on the part of the City Defendants."). The Plaintiff has sufficiently pled that he was terminated from his positions based on invidious discrimination and irrational prejudice. *See Baumgardner*, 108 F. Supp. 2d at 1054-56

("[T]he state actions must still bear a rational relationship to a legitimate government interest . . . The Equal Protection Clause exists to protect people from invidious discrimination and irrational prejudice. While Defendants may or may not ultimately prevail by offering a reasonable basis for their actions, the Plaintiff has pled facts sufficient to survive a 12(b)(6) motion to dismiss.").

Vrdolyak also argues Plaintiff has not alleged Vrdolyak was responsible for the termination of Plaintiff's employment. However, the Plaintiff alleges that Gonzalez and Vrdolyak knew of his daughter's EEOC charge and, therefore, conspired to remove him from his positions and refused to repay Plaintiff the back pay owed to him in retaliation. Therefore, Plaintiff sufficiently alleges Vrdolyak's involvement in Plaintiff's termination.

Lastly, Vrdolyak claims Plaintiff has failed to allege an injury. Plaintiff has sufficiently pled that he was harmed by Vrdolyak's termination of his employment and withholding back pay due to him.

## CONCLUSION

For the reasons stated above, Vrdolyak's Motion to Dismiss the First Amended Complaint is denied.

Dated: 6/28/05

JOHN W. DARRAH
United States District Judge