THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARENCE GROSS, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 03 C 9465 |
| | ) |
| TOWN OF CICERO, et. al. | ) Judge Darrah |
|     Defendants. | ) |

FILED SEP - 2 2005 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

### DEFENDANT BETTY LOREN-MALTESE'S MEMORANDUM IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT[1]

Betty Loren-Maltese submits the following memorandum in support of her motion for summary judgment with respect to all claims advanced against her by Plaintiff Clarence Gross in the above-captioned litigation:

### STATEMENT OF UNDISPUTED FACTS

**A. Background Facts**

Clarence Gross ("Clarence") is a former member of the Cicero Police Department who, during the period from 1998 to 2002, simultaneously held multiple appointed positions in the Town of Cicero's government. (L.R. 56.1 Statement of Undisputed Facts, ¶¶3, 7, 8, 9, 28).[2] These positions included: (1) hearing officer to the Board of Police and Fire Commissioners; (2) Chairman of the Board of Police and Fire Commissioners; (3) Director of Internal Services; (4) Deputy Liquor Commissioner; and (5) member of the Town of Cicero's 911 Board. *Id.*

---

[1] Loren-Maltese also adopts the Motion for Summary Judgment and supporting materials of Vrdolyak and the other Defendants by reference and incorporates those arguments here as well.
[2] All citations herein are to Betty Loren Maltese's Local Rule 56.1 Statement of Undisputed Facts unless otherwise indicated.

1

In his capacity as Chairman of the Board of Police and Fire Commissioners, Clarence was directly involved in the hiring and disciplining of police officers. (¶29). In 1999, Clarence hired his daughter Rhonda Gross ("Rhonda") to be a Cicero Police Officer. (¶13).

Defendant Betty Loren-Maltese ("Loren Maltese") is the former president of the Town of Cicero. (¶¶18, 19). Ms. Loren-Maltese became the president of the Town of Cicero in 1993. *Id.* She left office in August of 2002. *Id.*

### B. Rhonda Claims Sexual Harassment by Officer Jerald Rodish.

In 2000 or 2001, Rhonda told her father that a fellow police officer, Jerald Rodish, was sexually harassing her. Having been informed of this situation, Clarence Gross chose not complain to the Superintendent of Schools regarding Rodish's conduct. Nor did he bring a formal charge against Rodish which could have been heard by the Board of Police and Fire Commissioners. Instead, the only person whom Clarence Gross attempted to inform of his daughter's complaints was Defendant Betty Loren-Maltese, who was then the president of the Town of Cicero. (¶¶37, 47, 48, 50, 51). In his complaint Clarence alleges that he spoke to Loren-Maltese about Rodish's conduct and his daughter's situation, (Complaint, ¶¶15, 16), but in his deposition he admits he did not. (¶51).

Clarence Gross claims to have made "half a dozen" attempts to speak to Loren-Maltese regarding Rhonda's alleged harassment by Rodish. (¶37). By his own admission, however, he never actually had a single conversation with Loren-Maltese regarding Rhonda's claims:

2

> Q. [By Mr. Hunt] And on each of those first five or so conversations, you would go and relay a particular incident that was alleged to have occurred involving your daughter and Mr. Rodish, correct?
>
> A. [Clarence Gross] No.
>
> Q. [By Mr. Hunt] What would you do?
>
> A. [Clarence Gross] The conversations were almost repetitious. When I go there for a matter, I would say, Betty, there is a situation still going on with Rhonda, I'd like to speak to you about it, and take the opportunity to have you speak to Rhonda and --
>
> Q. [By Mr. Hunt] And she said, I will talk to you later?
>
> A. [Clarence Gross] She said we will talk later.

(¶38).

Not only did Clarence Gross acknowledge that he never actually made any specific statement to Loren-Maltese regarding the conduct Rhonda was allegedly experiencing, he also admitted that he never mentioned Rodish's name to Ms.Loren-Maltese:

> Q. [By Mr. Hunt] Okay. And in each of those first five conversations, you never related any specific facts or circumstances of any alleged incident involving your daughter, correct?
>
> A. [Clarence Gross] No, sir.
>
> Q [By Mr. Hunt] That's correct?
>
> A. [Clarence Gross] That's correct.
>
> Q. [By Mr. Hunt] Now in the last conversation you went there, and once again, you said, I'd like to speak to you about this continuing situation involving my daughter, correct?
>
> A. [Clarence Gross] Yes.
>
> Q. [By Mr. Hunt] Did you mention Rodish's name?

3

> A. [Clarence Gross] I didn't have to.
>
> Q. [By Mr. Hunt] Did you mention Rodish's name? Yes or no?
>
> A. [Clarence Gross] No, I did not.
>
> Q. [By Mr. Hunt] And, in fact, you had not mentioned Mr. Rodish's name in any of the preceding five conversations, correct?
>
> A. [Clarence Gross] No, I did not.
>
> Q. [By Mr. Hunt] And in this last conversation, the only response that she made was talk to Eddie; correct?
>
> A. [The Witness] She said, just call Eddie.
>
> Q. [By Mr. Hunt] Just call Eddie?
>
> A. [The Witness] Just call Eddie about it.

(¶38).

### C. Betty Loren-Maltese Is Not Liable For Acts That Occurred After Her Departure.

Betty Loren-Maltese left office as president of the Town of Cicero in August of 2002. Nonetheless, Gross claims that:

> As a result of Plaintiff's complaining about the sexual harassment and discrimination directed at his daughter and his daughter filing a charge of discrimination with the EEOC, Defendants Cicero, Loren-Maltese, Gonzalez and Vrdolyak terminated plaintiff and/or caused him to be terminated from the various positions he held with the town of Cicero and refused to pay back pay that was due and owing to him.

(Complaint, ¶31). However, Betty Loren-Maltese left office in August 2002. (¶19). After that time, she never had anything more to do serving the Town of Cicero. *Id.* Plaintiff cannot be permitted to simply lump all of the defendants together to establish their liability. Clarence Gross admits that he was not reappointed as Chairman of the

4

BOFPC in 2002. But he claims that he was never terminated from his other positions until he received a letter from Ramiro Gonzalez on September 23, 2002 – one month after Loren-Maltese left office. (¶¶78, 79). As such, Loren-Maltese cannot be held liable for terminating Clarence from any other position than the Chairman of the BOFPC since, by Clarence's own testimony he held those positions until after Ramiro Gonzalez took office.[3]

### D. CLARENCE WAS DISQUALIFIED AS CHAIRMAN

Under Illinois law, person may not simultaneously serve as a member of the BOFPC and simultaneously hold any other position with the town. (65 ILCS 5/10-2.1-3) As such, Clarence was disqualified from holding that position as soon as he accepted the other positions with the Town as Deputy Liquor Commissioner, Director of Internal Services and Hearing Officer.. At the very least, the Hearing Officer position created a conflict of interest for Clarence since was conducting hearings for the BOFPC and making factual findings that he would later have to consider and vote upon as Chairman. This is the very situation the legislature sought to avoid when it "create[d] an independent autonomous" BOFPC. *Mank v. BOFPC*, 7 Ill. App. 3d 478 (5th Dist 1972). And since termination from that position is the only thing that Clarence has claimed (or could possibly claim) that Loren-Maltese did in retaliation during the time she was in office[4], Clarence cannot make a claim against Loren-Maltese.

### E. THERE WAS NO ENFORCEABLE AGREEMENT

---

[3] Gross also claims he was eliminated from the 911 Board, an uncompensated position. In his complaint he alleges this occurred in 2001, but in his deposition he was unable to fix a date for this alleged termination. As such, he mere allegation in the complaint is insufficient to fix liability against Loren-Maltese regarding the 911 Board.

[4] Of course, if Gross is claiming that Loren-Maltese acted after leaving office, then she could not possibly have been acting under "color of law."

5

Clarence Gross makes many incredible claims in this case. One example is that Clarence testified that Loren-Maltese guaranteed him a job for at least 8 more years (¶10). He makes this incredible claim even though he has never produced a written agreement specifying a particular period of employment. Clarence also later admits that he had no way of knowing whether Loren-Maltese would still even be alive or in office at that time, acknowledging that she served only a 4 year term. (¶11). Of course, any claimed oral promise to provide guaranteed employment for a period of 8 years violates the statute of frauds and is unenforceable. (*McInerney v. Charter Golf*, 176 Ill. 2d 478 (1997)(holding that employment contracts longer than one year are governed by the statute of frauds and must be in writing to be enforceable).

Moreover, such an agreement would violate the Illinois Township Code and the Municipal Code which set an outer limit on the duration of contracts. Under Illinois law, a governmental entity may not make an employment agreement that is longer than the term of the mayor or president. 65 ILCS 5/8-1-7 (2004); Gerald M. Gorski, *Contracting with Municipal Corporations – The Prohibition on Multi-Year Agreements*, DuPage County Lawyers Bulletin, (vol. 9, no. 9, June/July 1985)[5] As such, Clarence's claim that he was verbally guaranteed employment for 8 years must fail.

## ARGUMENT

Mr. Gross filed suit against Loren-Maltese and her co-defendants on December 31, 2003. In the first count of an Amended Complaint subsequently filed against Loren-Maltese and other on or about March 3, 2005, Clarence Gross claims that Betty Loren-Maltese violated his First Amendment rights by intentionally retaliating against him "for

---

[5] While Mr. Gorski is listed as the author, it widely known among members of the DuPage Bar that Thomas Good did all of the scholarly work on this article.

6

complaining about harassment and retaliation directed at his daughter." (Amended Complaint, ¶39). The second count of that Amended Complaint asserts a violation of Clarence Gross' right to equal protection based on the same facts. Plaintiff also attempts to allege a conspiracy among the defendants under section 1985. Each of these claims is insufficient and must fail; accordingly, defendant is entitled to summary judgment as a matter of law.

### I. Betty Loren-Maltese Cannot Be Held Individually Liable Pursuant To Section 1983 Because She Was Not The Final Decisionmaker With Respect to Clarence's Appointment to the BOFPC.

Clarence Gross' individual claims against Betty Loren-Maltese under 42 U.S.C. §1983 must fail because Gross cannot establish that Ms. Loren-Maltese was responsible for his removal from any office. In order to establish a claim under 42 U.S.C. §1983 against a official acting in his or her individual capacity, a plaintiff must demonstrate that the official in question was directly responsible for the improper conduct and knowingly, willfully or at least recklessly caused the alleged harm by his or her action or failure to act. *McPhaul v. Madison County Board of Commissioners*, 226 F.3d 558, 566 (7th Cir. 2000).

In this case, Ms. Loren-Maltese cannot be held liable for any action against Clarence Gross because she lacked the requisite control over his continued status as member of the BOFPC. Individuals who are appointed to the BOFPC are hired only with the consent of the Town of Cicero's board. 65 ILCS 5/10-2.1-1 (2005) (stating that "the president of the village or incorporated town, with the consent of the board of trustees, shall appoint a board of fire and police commissioners.")

7

Ms. Loren-Maltese, therefore, could not individually hire or fire him. She could not prevent Clarence Gross' retention as the Chairman of the BOFPC because she lacked final policy making authority. Further, as a matter of law Gross could not retain any other office he held with the Town of Cicero while serving on the BOFPC. As 65 ILCS 5/10-2.1-3 of the Illinois statutes states:

> No person holding an office under a municipality, shall be a member of the board of fire and police commissioners or the Secretary thereof. The acceptance of any such office by a member of the board shall be treated as a resignation of his office as a member of the board or the Secretary thereof.

65 ILCS 5/10-2.1-3 (2005).

Accordingly, because Betty Loren-Maltese played no causal role with respect to Clarence Gross' loss of any position he held with the Town of Cicero, Clarence Gross' 42 U.S.C. §1983 claims against her fail as a matter of law. *Luck v. Rovenstein*, 168 F.3d 323, 327 (7th Cir. 1999) (explaining that in order to impose liability upon a government officer for actions taken under color of state law, the plaintiff must show that the defendant "caused the deprivation of a federal right.")

## II. Plaintiff Gross' Claims Are Barred By The Doctrine Of Qualified Immunity.

Even if Ms. Loren-Maltese had been directly responsible for any decision regarding Clarence Gross' continued employment, any claim against her would nonetheless be barred by the doctrine of qualified immunity. That doctrine protects public officials against "undue interference with their duties and potentially disabling threats of liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). The Supreme Court has made clear that when a public official is engaged in exercising a discretionary

8

function, qualified immunity applies so long as that official's conduct does not violate an individual's clearly established rights:

> Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known[.]

*Harlow*, 457 U.S. at 818.

The Seventh Circuit has recognized that this inquiry focuses on the objective "reasonableness" of the action, not the state of mind of the government official in question. *Levenstein v. Salafsky*, 164 F.3d 345, 350 (7th Cir. 1998) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Once the qualified immunity defense is raised, the plaintiff bears the burden of showing that (1) he has asserted a violation of constitutional right, and (2) whether the applicable constitutional standards were clearly established at the time in question. *Levenstein*, 164 F.3d at 351. Plaintiff Clarence Gross' claims fail outright because, as discussed below, there is no evidence that Betty Loren-Maltese, exercised her discretionary powers as the president of the Town of Cicero in any manner that violated Mr. Gross' constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (holding that if no constitutional right would have been violated even if the allegations were established "there is no necessity for further inquiries concerning qualified immunity.")

> III. **This Court Should Enter Summary Judgment In Favor of Defendant Loren-Maltese On Count I of Gross' Complaint Because The Plaintiff's Own Testimony Establishes That His Speech Was Not Entitled To First Amendment Protection.**

9

Count I of Plaintiff Clarence Gross's complaint against Betty Loren-Maltese, which asserts that Loren-Maltese retaliated against him in violation of his First Amendment rights, must fail because Gross' own deposition testimony reveals that the speech on which Mr. Gross bases his claim was not constitutionally protected. Not every word uttered by a public employee is protected by the First Amendment. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir. 1994). To be constitutionally protected, that speech must be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. 138 (1983).

In order to determine whether or not an employee's speech addresses a matter of public concern, it is necessary for the court to examine "the content, form and context of the speech." *Johnson v. University of Wisconsin*, 70 F.3d 469, 482 (7th Cir. 1995). In determining whether speech is protected, courts also take into account the motivation behind the statement in question. As the Seventh Circuit explained in *Crowley v. McKinney*, 400 F.3d 965 (7th Cir. 2005), "[t]he Constitution does not protect a public employee from workplace retaliation for statements that were intended not to alter public opinion or beliefs but merely to resolve a personal grievance on favorable terms."

Accordingly, even where speech might be of interest to the public, it will not be protected if the only point of that speech was "to further some purely private interest." *Kokkinis*, 185 F.3d at 844 (officer's public comments on sex discrimination in department were not protected where his sole motivation was to further a personal vendetta against police chief).

The Seventh Circuit has repeatedly recognized that not all statements that relate to claims of sexual harassment are entitled to protection under the First Amendment.

10

*McKenzie v. Milwaukee County*, 381 F.3d 619 (7th Cir. 2004) (explaining that "[s]exual harassment is indeed an important matter, but not all speech relating to sexual harassment enjoys constitutional protection.") Speech regarding sexual harassment by a government employee will not be protected where the point of that speech is not to address a question of importance to the community at large, but instead simply seeks to vindicate a private interest. *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989)

The statements allegedly made by Plaintiff Clarence Gross to Betty Loren-Maltese on which Mr. Gross bases his complaint for retaliation were not entitled to First Amendment protection and therefore cannot support such a claim. Examining first the content of the statements allegedly made by Clarence Gross, it is not at all clear that Gross' statements themselves actually conveyed any information or viewpoint whatsoever, let alone contained expressive content to which the First Amendment might apply.

At his deposition, Gross asserted that he had attempted to speak to Loren-Maltese approximately a "half a dozen" times regarding the treatment of his daughter Rhonda by officer Rodish. (¶37). He admitted, however, that during the conversations he had with Ms. Loren-Maltese he never communicated any information regarding his daughter's alleged harassment. (¶38, 39, 40). Nor did he so much as mention the name of Rhonda Gross's alleged harasser, Gerald Rodish, to Ms. Loren-Maltese. (¶43).

It is therefore apparent that the content of Gross' statements – which consisted of brief, non-specific remarks that never conveyed information regarding Rhonda Gross's situation, did not come close to addressing a matter of public concern and that Gross therefore cannot state a claim for retaliation on the basis of his exercise of his First

11

Amendment rights. *See, Hartman v. Board of Trustees of Community College District No. 508*, 4 F.3d 465 (7th Cir. 1993) (explaining that in order to demonstrate that the content of his speech was protected under the First Amendment, a plaintiff must be able to recount that speech with specificity).

Even if Gross had specifically articulated any complaints regarding the treatment of his daughter to Ms. Loren-Maltese, those statements would still not constitute a matter of public concern. When speaking to Ms. Loren-Maltese, Plaintiff Gross was not attempting to act as a citizen, concerned with a matter of importance to the community as a whole, but rather was speaking privately with the personal motive of bringing his daughter's alleged problems with Rodish to a resolution. To hold otherwise would cloak every petty employee grievance with constitutional protection. *Compare, Connick v. Meyers*, 461 U.S. 138 (1983).

As explained above, such communication does not constitute protected speech on which a claim of retaliation for exercise of First Amendment rights can be founded. *Johnson* at 482-83 (explaining that the plaintiff's complaint to her supervisors regarding sexual harassment related "soley to the resolution of a personal problem and that such speech does not address a matter of public concern.); *Kokkinis*, 185 F.3d at 844; *see also, Gustafson v. Jones*, 290 F.3d 895 (7th Cir. 2002); *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989). Accordingly, because the undisputed evidence demonstrates that Clarence Gross cannot assert a claim for retaliation in violation of his First Amendment rights, summary judgment should be granted in favor of Defendant Betty Loren-Maltese on Count I of Plaintiff Gross' complaint.

### IV. Gross's Equal Protection Claim Must Fail Because It is Redundant With His First Amendment Claim and, In Any Event, Gross Cannot Identify A Similarly Situated Individual Who Was Treated Differently.

This court should enter summary judgment in favor of Defendant Loren-Maltese and against Plaintiff Clarence Gross on Count II of Gross' complaint, because that count is nothing more than an effort by Gross to restate his First Amendment claim as one for equal protection. As the Seventh Circuit has recognized, by definition, First Amendment "retaliation claims protect constitutional rights only against their unequal infringement." *Grossman v. Indianapolis*, 100 F.3d 1287, 1295 (7th Cir. 1986). It is therefore simply redundant for a plaintiff to attempt to assert an equal protection claim based upon the proposition that he was treated unequally because he exercised his right to free speech. *Id.* Such a claim cannot stand because it amounts to "no more than a restatement of his First Amendment claim." *Id.* (quoting *Thompson v. City of Starkville, Miss.*, 901 F.2d 456, 468 (5th Cir. 1990)).

An examination of the language of Plaintiff Gross' equal protection claim confirms its redundancy. Plaintiff Clarence Gross asserts that he has been subjected to "retaliation." (Amended Complaint of C. Gross, ¶¶49, 53). In fact, he explicitly invokes the First Amendment, asserting that the defendants engaged in a "conspiracy to deprive Plaintiff of his rights as guaranteed under the United States Constitution through the First and Fourteenth Amendments. (Amended Complaint of C. Gross, ¶51). Because plaintiff's equal protection claim amounts to nothing more than reassertion of his prior claim that he was retaliated against based upon the exercise of his First Amendment rights, Defendant Loren-Maltese is entitled to summary judgment on Count II of Mr. Gross' complaint as well.

13

To the extent that Count II of Gross' complaint could be construed as something more than a simple restatement of his First Amendment retaliation action, that claim nonetheless fails because Gross cannot state a *prima facie* case establishing a violation of his right to equal protection of the laws under the Fourteenth Amendment. Gross cannot identify any similarly situated individual who was treated differently. *See, Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 2005).

While there is no precise definition of the meaning of the phrase "similarly situated", courts recognize that in order to meet this standard, a plaintiff asserting a claim of denial of equal protection must be "prima facie identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2002). For example, in the context of employment, a plaintiff, at a minimum must be able to identify another employee who occupied the same position, was subject to the same standards, performed at the same level, and yet was treated differently. *See, Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).

Plaintiff Gross' claim must fail because he can identify no such comparator. Gross claims that he was discharged from his position as Chairman of the CBFPC because he was the father of Rhonda Gross, and because he and his daughter made statements regarding officer Rodish's conduct. Gross, however, was the sole individual occupying the discrete positions to which he was appointed and no other individual in the town was subject to the same requirements. Because the absence of any other town employee who occupied the same positions as Gross and who was subject to the same standards, Gross' equal protection claim fails as a matter of law and summary judgment should be granted in favor of Defendant Betty Loren-Maltese. *McDonald*, 371 F.3d at

1002 (explaining that "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the singularly situated requirement has been met.")

Moreover, Gross cannot establish any claim for retaliation because he cannot rebut Loren-Maltese's legitimate, non-discriminatory reasons for terminating him. See, *McDonnell Douglas v. Green*, 411 US 792 (1973). Specifically, Loren-Maltese testified that she did not reappoint Clarence as Chairman of the BOFPC because she questioned (1) his judgment and the hiring standards that he was applying for new police officers; (2) his favoritism toward his daughter and other officers; (3) his temper based on rumors that he had beaten a young man who had expressed interest in Rhonda after arranging for his incarceration; his honesty and degree of cooperation with a pending State Police investigation. (¶83). Gross cannot rebut any of these reasons. At the very least, Loren-Maltese believed the reasons to be true and therefore is entitled to summary judgment.

## CONCLUSION

WHEREFORE, Betty Loren-Maltese respectfully requests that this Court: (1) determine that she is entitled to qualified immunity; and (2) enter summary judgment in her favor and against Plaintiff Clarence Gross with respect to all of Clarence Gross' claims.

Respectfully Submitted

HUNT & ASSOCIATES, P.C.

By: /s/ Keith L. Hunt
An Attorney for Defendants

Keith L. Hunt
Hunt & Associates, P.C.
Three First National Plaza
Suite 2100
Chicago, Illinois 60602
(312) 558-1300

15

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing Notice of Motion, and a copy of Betty Loren Maltese's & Edward R. Vrdolyak's Motions for Summary Judgment, their respective supporting memoranda, their respective Rule 56.1 Statement of Uncontested Facts and their respective Exhibits in support, were served on all counsel of record, as listed below, by Regular Mail, on September 2, 2005, at or before 5:00 p.m.

Terry A. Ekl
Patrick Laurence Provenzale
Connolly, Ekl, Williams, P.C.
115 West 55th Street, Suite 400
Clarendon Hills, Illinois 60514
Fax No. 630-654-0150

Ms. Holly Tomchey
Town of Cicero
4936 West 25th Place
Cicero, Illinois 60804
Fax No. 708-656-0648

Dana L. Kurtz
Kurtz Law Offices, LLC
414 South State Street
Lockport, Illinois 60441
Fax No. 312-893-2239

Nicholas Geanopoulos
Edward R. Vrdolyak, Ltd.
741 North Dearborn Street
Chicago, Illinois 60610
Fax No. 312-482-8026

Jennifer Naber
Joseph Gagliardo
Laner, Muchin, Dombrow, Becker,
Levin and Tominberg, Ltd.
515 North State Street
Chicago, Illinois 60610
Fax No. 312-467-9479

Michael J. Kralovec
Joseph R. Lemersal
Sara J. Rowden
Nash, Lalich & Kralovec, LLC
30 North LaSalle Street
Suite 1526
Chicago, IL 60602
Fax No. 312-372-7238

Terence P. Gillespie
Genson & Gillespie
53 West Jackson Boulevard
Suite 1420
Chicago, IL 60603
Fax No. 312-939-3654

Keith L. Hunt