# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CLARENCE GROSS, )
)
    Plaintiff, )
)   **No. 03 C 9465**
    v. )
)   **Judge John W. Darrah**
TOWN OF CICERO; BETTY LOREN-MALTESE, )
former President of the Town of Cicero; )
RAMIRO GONZALEZ, President of the Town )
of Cicero; and EDWARD VRDOLYAK, individually. )
)
    Defendants. )

## OPINION AND ORDER

Plaintiff, Clarence Gross, filed suit against Defendants, the Town of Cicero, Betty Loren-Maltese, Ramiro Gonzalez, and Edward Vrdolyak. Count I of the Plaintiff's First Amended Complaint alleged a violation of the Plaintiff's First Amendment rights, and Count II alleged a violation of the Plaintiff's Equal Protection rights. Cicero filed a Counterclaim against the Plaintiff, alleging unjust enrichment and breach of fiduciary duty. Summary judgment was entered in favor of the Defendants on both of Gross's claims. Summary judgment was entered in favor of Gross on Cicero's unjust enrichment claim. Summary judgment was entered in favor of Cicero on its breach of fiduciary duty claim as to liability and denied on the issue of damages.

Trial of the breach of fiduciary duty claim damages was by the Court without a jury on March 16 and 17, 2006. The parties presented exhibits and testimony of several witnesses. Prior to and during the trial, Gross objected to certain evidence being admitted, specifically, the testimony of Dennis Both and Perry Gulbrandsen, arguing that Cicero failed to disclose these witnesses and evidence of damages in pretrial discovery. Gross's objections were taken under advisement.

# FAILURE TO DISCLOSE WITNESSES AND EVIDENCE

As a preliminary matter, Gross seeks to bar the testimony of Dennis Both – an attorney for Cicero, who testified as to Cicero's settlement and attorney's fees paid in relation to the Mario Moreno case – and Gulbrandsen – who testified regarding the costs of his investigation into the presence of unqualified police officers on the Cicero police force. The Court heard this testimony subject to Gross's objection to its admissibility.

Federal Rule of Civil Procedure 26(a)(1)(C) requires the disclosing party to provide "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying . . . the documents or other evidentiary material . . . on which computation is based, including materials bearing on the nature and extent of injuries suffered . . . ." A party is also required to supplement or amend its disclosures "at appropriate intervals." Fed. R. Civ. P. 26(e). Rule 26(a)(2) requires a party to disclose the identity of any person who will testify as an expert. Fed. R. Civ. P. 26(a)(2). "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

A "sanction of exclusion is automatic and mandatory unless the sanctioning party can show its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). The determination of whether the disclosure violation is justified or harmless is at the court's discretion. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (*David*). Factors that the court should consider in making this determination include: (1) the

surprise or prejudice to the party against whom the evidence is offered, (2) the ability to cure the prejudice, (3) the likelihood of disruption at trial, and (4) the willfulness or bad faith involved in not disclosing the evidence at an earlier date. *See David*, 324 F.3d at 857.

In its Counterclaim, Cicero alleged that it suffered damages by Gross's breach of fiduciary duty, including "legal fees in defense of civil suits and settlement, verdict award payouts on civil suits brought by various aggrieved citizens against the unqualified peace officers." In its July 25, 2005 responses to Gross's first request for production of documents, Cicero responded to Gross's requests for documents relating to any suits and complaints filed by the unqualified officers, "including invoices and bills that pertain to the legal fees incurred by . . . Cicero," that Cicero objected to the request as overly broad, unduly burdensome, that the request sought irrelevant information, and that the request sought disclosure of material protected by the attorney-client privilege and the work- product doctrine. Cicero's response to Gross's request for all documents that related to Cicero's claim that it would be financially responsible to pay legal fees and settlement awards or verdicts related to illegal or unconstitutional acts and/or omissions committed within the scope of employment of the unqualified officers was, "None; investigation continues." In its response to Gross's request for all documents relating to Cicero's contention that it suffered damages, Cicero referenced its production responses and that the investigation continues. No documents relating to damages were disclosed.

Discovery closed on August 9, 2005. On September 16, 2005, Gross served his supplemental Rule 26 disclosures on Cicero. Based on a September 2005 newspaper article, which suggested that Cicero had retained Gulbrandsen, Gross's supplemental disclosures indicated that Gulbrandsen may have knowledge of investigations "he may conduct into the hiring and appointment and retention of

3

police officers in the Cicero Police Department." Cicero had not disclosed Gulbrandsen, and Gross's inclusion of Gulbrandsen as a person possibly having knowledge of the case was based solely on the newspaper article.

On March 3, 2006, less than two weeks before trial, Cicero included, in Schedule G of the Draft Pretrial Order, a breakdown of its alleged damages, including the settlement costs and attorney's fees related to the Joseph Moreno case[1] and attorney's fees and costs paid and expected to be paid (a total of $150,000) by Cicero to investigate and remedy the presence of unqualified police officers still employed by Cicero. On March 14, 2006, two days prior to trial, Cicero sought to amend its Schedule G, adding the salary paid to Gross by Cicero from 1998 through 2002, in the amount of $302,473.79. Cicero's Draft Pretrial Order also identified, for the first time, that Gulbrandsen would testify at trial. Cicero failed to disclose or produce a single document regarding its alleged damages from Gross's breach of his fiduciary duty prior to the close of discovery or trial.

Over Gross's objection, Cicero presented Dennis Both at trial to testify to the damages Cicero suffered as to the settlement and defense of the Moreno case. The Court reserved ruling on the objection and the admissibility of the testimony. The testimony, if admissible, is highly material to the issue of damages and, if erroneously considered, could not be deemed to be harmless.

Cicero argues that Gross was not surprised or prejudiced by Both's testimony because: (1) Gross was aware that Cicero sought compensation for such damages, as demonstrated by its allegations in the Counterclaim; (2) Gross was aware of the Moreno case; (3) Gross knew of

---

[1] Joseph Moreno filed suit against the Town of Cicero and Cicero Police Officer Lorne Stenson following Moreno's arrest by Stenson. Moreno alleged that he was falsely arrested and charged with driving under the influence of alcohol in order to interfere with his then-candidacy against Loren-Maltese for the office of President of the Town of Cicero. The lawsuit was subsequently settled.

Dennis Both as a witness; and (4) Both was deposed by Gross. While Gross was aware, generally, of the type of damages Cicero was going to seek and of the existence of the Moreno case, Cicero never disclosed any documentation as to the damages sought and never disclosed the amount or basis of the amount sought prior to its Draft Pretrial Order. While Gross knew that Dennis Both was to be a possible witness, Cicero has not demonstrated that it disclosed that Both was a witness as to the Moreno case and resulting damages. While Both was deposed, when asked about his knowledge of the counterclaims, Both was advised not to, and did not, answer any questions regarding the counterclaim based on alleged attorney-client privilege and the work-product doctrine. *See Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (defendant cannot refuse certain discovery based on privilege and then testify to same matter at trial); *Fidelity Nat. Title Ins. Co. Of New York v. Intercounty Nat. Title Ins. Co.*, 2003 WL 2005233 (N.D. Ill. April 30, 2003) (party cannot assert privilege to avoid discovery and then testify about purportedly privileged material at trial). Furthermore, at the time of the deposition, Cicero had not disclosed any specific information about the damages it sought or that Both was going to testify as to the damages sought at trial. Accordingly, Gross was surprised that Both would testify regarding damages and was prejudiced by Cicero's failure to disclose any information about these claimed damages. There was no opportunity to cure the disclosure failure without disrupting the trial because the disclosure did not take place until the submission of the Draft Pretrial Order – on the eve of trial. Moreover, Cicero has failed to offer any justification for this failure to timely disclose information relating to damages until the eve of trial.

Based on the above, Both's testimony regarding damages is barred and will not be considered by the Court.

Cicero presented Gulbrandsen to testify as to the damages Cicero suffered resulting from costs Cicero would incur because of the presence of unqualified police officers on the police force. At trial, Cicero conceded that Gulbrandsen was testifying as an expert witness. Cicero now attempts to withdraw this concession. However, as found by the Court at trial, Gulbrandsen was testifying as an expert.

Cicero did not disclose Gulbrandsen as a witness, as required by Rule 26(a)(2); and his testimony, if admissible, would be material and not harmless. Furthermore, Cicero failed to disclose (or even retain) Gulbrandsen prior to the close of discovery. Gross was surprised and prejudiced by Cicero's failure to timely disclose Gulbrandsen and any documents regarding his opinion of future damages. Gross could not depose Gulbrandsen before trial or properly prepare to cross-examine Gulbrandsen due to the late disclosure and lack of production by Cicero. Cicero fails to offer any justification for its failure to do so. Gross's inclusion of Gulbrandsen as a possible witness in its supplemental disclosures based on a newspaper report does not excuse Cicero's failure to disclose or diminish the prejudice suffered by Gross if his testimony was admitted.

Based on the above, Gulbrandsen's testimony is barred and will not be considered by the Court.

## TRIAL

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and the Court's assessment of the credibility of the trial witnesses. To the extent, if any,

that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact.

## **FINDINGS OF FACT**

In April of 1997, Gross was appointed by then-Cicero President Betty Loren-Maltese to the positions of Deputy Liquor Commissioner and Director of Internal Services. In January of 1998, Loren-Maltese appointed Gross to the Chairman of the Cicero Board of Fire and Police Commission (the "Commission"). Gross's testimony that he did not receive any compensation for the Chairman of the Cicero Board of Fire and Police Commission position was not credible, and a contrary admission was introduced at trial. Gross was paid one salary, collectively, for all of his official positions with Cicero. No evidence was offered that showed that any portion of Gross's salary was for one position versus any other position. Between January of 1998 and September of 2002, Gross was paid $302,473.79 by Cicero.

The Commission had the sole authority to determine the qualifications of potential police officers. All applicants for a police officer were required to pass a a psychological and polygraph test to be considered for a position. The purpose of the psychological assessment was to look for the strengths and weaknesses of candidates. The purpose of the polygraph test was to determine the candidates' truthfulness. The results of these tests were important factors in determining whether a candidate should be employed as a Cicero Police Officer.

While Chairman of the Commission, Gross hired certain individuals as police officers only because he was instructed to do so by Cicero President Loren-Maltese. In Gross's opinion, some of the police officers he hired at the direction of Loren-Maltese did not meet the minimum standards to be a Cicero Police Officer.

Specifically, Lorne-Maltese directed, and Gross hired, Lorne Stenson as a police officer, even though Gross did not consider Stenson qualified. When Stenson was hired, the hiring process was not open. Before hiring Stenson, Gross told Loren-Maltese that, in his opinion, Stenson was not a qualified candidate because both of Stenson's psychological assessment and polygraph test results were not acceptable. Stenson's psychological assessment indicated that Stenson responded to questionnaire items with a mix of unsophisticated self-promotion on one hand; and, on the other hand, he answered with evasiveness and indecision, overusing "I don't know" and giving questionable responses to others. The psychological assessment demonstrated that a prominent characteristic of Stenson appeared to be his unsophisticated and naive lack of reflection and insight. Stenson also expressed a great deal of pressure regarding family finances over the past eight months. Dr. Wolfe, who administered the test, concluded that both emotionally and interpersonally, Stenson was to be judged a somewhat below-average candidate for the position of a police officer for Cicero. Gross did not inform other Commission members that Loren-Maltese directed him to hire Stenson and did not tell the other Commission members that Stenson had failed the psychological test.

Gross also hired Sandra Brown as a police officer when the hiring process was not open. Brown did not take a psychological test or a polygraph test. Gross hired Brown as a Cicero Police

Officer at the direction of Loren-Maltese. Gross did not tell the other Commission members that Brown had not taken a psychological or polygraph test or that Loren-Maltese directed Gross to hire Brown.

Gross hired Edward Lyman as a Cicero Police Officer at the direction of Loren-Maltese. In Gross's opinion, Lyman was not qualified as a police officer. Lyman failed the polygraph test.

Gross hired the individuals Loren-Maltese directed him to hire, in part, because he was afraid of losing his various official positions with the Town of Cicero. He also hired unqualified individuals because, "to a degree," he "wanted to keep the salaries coming in of $60,000 a year and [he] knew if [he] didn't hire [these] people that [he would] lose [his] job." The results of some of the psychological and polygraph tests were provided to the other Commission members for their review. The Commission was free to, and did, discuss some applicants' test results when determining whether to allow the individuals to be a Cicero Police Officers.

The Court previously held that Gross breached his fiduciary duty to Cicero by failing to appoint the police officers based on Gross's own judgment of the applicants' qualifications; instead; Gross appointed police officers at the direction of Loren-Maltese. The Court also found that a trial on damages was required because genuine issues of material fact existed as to the extent of damages Cicero suffered.

## CONCLUSIONS OF LAW

A wrongdoer is liable for the entire amount of loss occasioned by his breach of fiduciary duty. *See International Capital Corp. v. Moyer*, 347 Ill. App. 3d 116, 126 (2004) (*Moyer*). The plaintiff must not only prove the amount of loss but also that the defendant's actions proximately caused the injury resulting in the damages sought. *See Moyer*, 347 Ill. App. 3d at 126.

9

A breach of fiduciary duty and resulting damages, as an ordinary civil case, must be proven by a preponderance of the evidence. *See Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 191 (2005) (*Avery*). A proposition is proved by a preponderance of the evidence if it has been found to be more probably true than not true. *See Avery*, 216 Ill. 2d at 191.

Cicero seeks to recover settlement costs because of the conduct of former-Cicero Police Officer Stenson and attorney's fees and costs associated with the Moreno case. Based on the admissible evidence, Cicero has failed to demonstrate, by a preponderance of the evidence, any damages associated with these costs or that Gross's actions proximately caused the injury resulting in the damages sought.

Cicero seeks to recover the costs to investigate and remedy the presence of unqualified police officers on the Cicero police force. Based on the admissible evidence, Cicero has failed to demonstrate, by a preponderance of the evidence, any damages associated with these costs or that Gross's actions proximately caused the injury resulting in the damages sought.

Cicero seeks to recover the salary Gross received, a total of $302,473.79, while he was Chairman of the Commission.[2]

Illinois permits a complete forfeiture of any salary paid to a fiduciary during the time that the fiduciary was breaching his duty to the employer. *See Vendo Co. v. Stoner*, 58 Ill. 2d 289, 314 (1974) (*Vendo*); *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 373 (1994) (*Levy*). The forfeiture

---

[2]Gross also argues that Cicero should not be able to recover his salary because it failed to disclose it was seeking such damages until after discovery closed. However, in July 2005, Cicero disclosed, in its response to Gross's Interrogatory No. 20 (which requested identification of the element of injury or loss Cicero claimed), Gross's pay records. Accordingly, these damages were timely disclosed. Furthermore, even if Cicero had failed to disclose these damages, such failure would have been harmless. Gross was aware of his salary, and he has not shown how he would have been prejudiced by a late disclosure.

of the salary is not dependent on whether the employee's conduct is injurious to the employer, "as the misconduct of the agent affects the contract from considerations of *public policy* rather than of injury to the principal." *ABC Trans Nat'l Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App. 3d 817, 837 (1980) (emphasis in original). Furthermore, complete forfeiture is permitted even if the employee did legitimate work for the employer during his breach of fiduciary duty. *See Vendo*, 58 Ill. 2d at 314; *Levy*, 268 Ill. App. 3d at 373. For example, in *Levy*, the Illinois Appellate Court affirmed the trial court's order requiring the defendants, whom breached their fiduciary duty, to forfeit all salary and other benefits for the entire time that they were breaching their fiduciary duty, rejecting the defendants' argument that such an award was "patently excessive" because it was uncontested that the defendants had continued to work diligently for the plaintiff. *Levy*, 268 Ill. App. 3d at 373-74; *see also, Hill v. Names & Addresses, Inc.*, 212 Ill. App. 3d 1065, 1083, 1086 (1991) (public policy requires the forfeiture of salary "even when it more than compensates the plaintiff for injury or damage resulting from a breach of loyalty . . . the purpose of [this remedy] is not to compensate the injured party for his losses, but to deprive the wrongdoer of the gains resulting from a breach of duty.").

Gross received one salary for all of his positions with Cicero. Gross received a total salary of $302,473.79 as compensation for the time he was Chairman of the Commission. During this same time frame, Gross was employed by Cicero as Deputy Liquor Commissioner and Director of Internal Services. Complete forfeiture of Gross's salary is awarded to Cicero in the amount of $302,473.79.

## CONCLUSION

Judgment is entered on the Town of Cicero's breach of fiduciary claim in favor of the Town

of Cicero, and against Clarence Gross, in the amount of $302,473.79.

Dated: June 28, 2006

JOHN W. DARRAH
United States District Court Judge

12